1  EVAN GOLDSEN SBN 257775
   CARLY CHRISTOPHER SBN 278795
2  **Special Education Collaboration Project**
   3186 Vista Way, Ste. 301
3  Oceanside, CA 92056
   Telephone: (408) 351-0151
4  Fax: (415) 276-1845
   eg@specialedcollaboration.net
5  cc@specialedcollaboration.net

6

7  Attorneys for Plaintiffs

8              UNITED STATES DISTRICT COURT

9     NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

10
   H.D, by and through his Guardians ad Litem,        Case No.
11 PHILIP and TRACI DOKAS,
                                                      <u>COMPLAINT FOR:</u>
12        Plaintiffs,
                                                      1.  Appeal Portions of California Office of
13    v.                                                  Administrative Hearings Decision
                                                          [20 U.S.C. § 1415, et seq.];
14 SAN FRANCISCO UNIFIED SCHOOL
   DISTRICT,                                          2.  For Attorneys Fees as Prevailing Party
15                                                        under 20 U.S.C. § 1415(i)(3); and
          Defendant.
16                                                    3.  For Violations of Section 504 and the
                                                          Americans with Disabilities Act of 1990
17

18

19

20

21

22

23 NOW COMES Plaintiff H.D. ("H.D." or "Student"), a disabled minor, by and through his

24 parents, Philip and Traci Dokas and (collectively, "Parents"), for a complaint against Defendant

25
   SAN FRANCISCO UNIFIED SCHOOL DISTRICT ("Defendant," "District," or "SFUSD"),
26
   alleges the following:
27

28

**PRELIMINARY STATEMENT**

1.      Plaintiff, H.D., has been aggrieved by a final order rendered by an administrative law judge (ALJ) from the California Office of Administrative Hearings (OAH) on or about January 16, 2025. This action is brought pursuant to Section 1415(i)(2)(A) of Title 20 of the United States Code, also referred to as the Individuals With Disabilities Education Act (hereinafter "IDEA"). (20 U.S.C. §1415(i)(2)(A); see generally 20 U.S.C. §§ 1400 et seq.) This action is also brought pursuant to Title II of the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12132); Section 504 of the Rehabilitation Act of 1973 ("Section 504") (29 U.S.C. § 794(a)); and Section 504's implementing regulations (29 U.S.C. § 794(a); 34 C.F.R. Parts 104-106).

**JURISDICTION, VENUE, AND EXHAUSTION**

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i)(3).

3.      Venue in this court is proper under 20 U.S.C. § 1391(b) because the Plaintiff and Defendant SFUSD are located within this district and the claims arose within this district.

4.      A due process hearing has been held by OAH pursuant to the Individuals with Disabilities Education Act or "IDEA"; the Decision ("OAH Decision") in that case – OAH Case No. 2024090473 – was issued by OAH on January 16, 2025. A true and correct copy is attached hereto as **Exhibit "A".** This action timely follows within 90 days of the Decision.

5.      Plaintiff has exhausted all remedies available to him under the IDEA as required by 20 U.S.C. § 1415(i)(2) by issuance of the OAH Decision.

**PARTIES**

**H.D., a minor, by and through his Guardians Ad Litem v. San Francisco Unified School District**
**Complaint for Damages**

2

6.      H.D. is a citizen of the United States, who at the time of the violations alleged herein, resided with his parents in San Francisco, California, which is located within San Francisco County and the boundaries of the San Francisco Unified School District. At all times relevant herein, H.D. was, and continues to be, a minor, having been born on September 5, 2015. Student is a qualified handicapped person entitled to the legal rights and remedies set forth in the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 749, and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. H.D. was born with Congenital Central Hypoventilation Syndrome (CCHS), a rare neurological life-threatening disorder, and is tracheostomy dependent as a result. H.D.'s autonomic nervous system's control over breathing is impaired as a result of his CCHS. H.D. requires appropriate, experienced and trained 1:1 nurse support throughout the entire school day to ensure his safety, which allows him to access the curriculum. 1:1 nursing support is required because H.D. needs critical nursing services during the school day, including tracheostomy management (e.g. suctioning mucus to clear his airway), regular $CO_2$ level monitoring, ventilator intervention when required (e.g. in the event of elevated $CO_2$ levels or unconsciousness), and emergency trach replacement in the event H.D.'s tracheostomy tube is dislodged.

7.      Phil and Traci Dokas are Student's mother and father, and are citizens of the United States, who, at the time of the violations alleged herein, resided within San Francisco, California, which is within San Francisco County and the boundaries of the District.

8.      Defendant SFUSD is a public school district organized and existing under the laws of the State of California and is located within San Francisco County. At all times relevant herein, SFUSD was the local education agency responsible for providing Student with full and equal access to the public education programs and activities it offers in compliance with the

requirements of state and federal law, and for providing Student, who is eligible for special education, with a "free appropriate public education" ("FAPE") under the IDEA, the California Education Code, and Section 504, for which SFUSD receives federal financial assistance.

## **PROCEDURAL HISTORY**

9.     On or about September 10, 2024, on behalf of Plaintiff, Evan Goldsen, Esq. and Carly Christopher, Esq. of Special Education Collaboration Project, filed a request for due process and mediation ("Due Process Hearing") with the California Office of Administrative Hearings ("OAH").

10.     On or about September 13, 2024, OAH issued a Scheduling Order Setting Telephonic Prehearing Conference and Due Process Hearing in the matter of *Philip and Traci Dokas, Parent(s) on Behalf of H.D., Student v. San Francisco Unified School District* OAH Case No. 2024090473, setting the hearing for October 29 – 31, 2024.

11.     On or about September 19, 2024, OAH issued an Order Granting Request for Videoconference Mediation and Continuance of Due Process Hearing, setting a mediation date for October 7, 2024, a prehearing conference for November 4, 2024, and the due process hearing for November 19, 2024.

12.     On or about September 23, 2024, on behalf of SFUSD, S. Diane Beall, Esq. and Brenda Arzate, Esq. of SFUSD Office of the General Counsel filed a response to the due process complaint.

13.     On or about October 7, 2024, Plaintiff and SFUSD were unable to resolve the matter at mediation.

14.     The Due Process Hearing for OAH Case No. 2024090473 was held via videoconference before Administrative Law Judge ("ALJ") Tiffany Gilmartin on November 19 –

21 and December 2 - 5, 2024 (the "OAH Hearing").

15.     On or about January 16, 2025, OAH issued its OAH Decision, which was served via electronic mail.

16.     The OAH Decision identifies a total of 22 separate issues falling into three broad categories: Whether the District denied Student a FAPE during the 2022 – 2023 school year; Whether the District denied Student a FAPE during the 2023 – 2024 school year; and Whether the District denied Student a FAPE during the 2024 – 2025 school year.

17.     The OAH Decision held that the Student prevailed with respect to issue 1(b) (Related to SFUSD's failure to implement H.D.'S IHP during the 2022-2023 school year), 1(f) (Related to District's failure to provide written guidelines of Student's implemented special education services during the 2022 – 2023 school year), 2(e) (Related to SFUSD's failure to implement H.D.'S IHP during the 2023-2024 school year), 2(i) (Related to District's failure to provide written guidelines of H.D.'S implemented special education services during the 2023 – 2024 school year), and 3(g) (Related to District's failure to provide written guidelines of H.D.'S implemented special education services during the 2024 – 2025 school year). Specifically, the OAH Decision held that Student's assigned nurse was often absent or late and consistently left him unattended in contradiction with his then operative IEP that required 1:1 nursing support throughout the entire school day during the 2022 – 2023 school year. The OAH Decision also held that the District failed to provide Parents with the California School Nurse Organization (CSNO) guidelines for tracheostomy and ventilator management upon which the District relied to develop Student's daily nursing care protocols. Without knowledge of the CSNO guidelines, Parents were unable to meaningfully participate in the IEP process. The CSNO guidelines were either in contradiction with, or silent as to Student's treating physician's medical orders

concerning suctioning and chest percussion therapy (CPT) during the 2022 – 2023, 2023 – 2024, and 2024 – 2025 school years. The District prevailed as to the remaining issues.

## COMPLAINT

18.     H.D. is a student who resides and attends school in SFUSD. He is currently in the third grade at Sanchez Elementary School.

19.     H.D. initially qualified for special education and related services at age 3 under the primary qualifying criteria of other health impairment (OHI) related to his tracheostomy and ventilator dependence, and need for 1:1 nursing support in the school setting. H.D. continued, and continues, to qualify for special education and related support.

20.     H.D.'s operative IEPs for the 2022 – 2023 and 2023 - 2024 school years simply state "nursing services required for the entirety of the school day." The exact same language was used by SFUSD to describe H.D.'s nursing services offered during the 2024-2025 school year. Those IEPs are notably silent as to the assigned nurse's requisite training, experience, and qualifications. Statutory authority provides additional guidance. California Education Code § 49423.5 regulates the delivery of "specialized physical health care services" ("SPHCS") by school personnel. SPHCS means those health services prescribed by the child's licensed physician and surgeon require medical related training for the individual who performs the services, and which are necessary during the school day to enable the child to attend school. Cal. Code Regs., tit. 5, § 3051.12(b)(1)(A). Medically related training must be done by "a qualified school nurse, qualified public health nurse, qualified licensed physician and surgeon, or other approved programs..." Cal. Code Regs., tit. 5, § 3051.12(b)(1)(E)(2). The implementation of a prescription must be assisted and coordinated by a school physician or nurse, who must consult with appropriate personnel and maintain communication with health agencies providing care to

the student. Cal. Ed. Code, §§ 49423(a), 49423.5(a)(2); Cal. Code Regs., tit. 5, § 3051.12(b)(3)(D)(1)-(3). It must be done pursuant to "protocols and procedures developed through collaboration among school or hospital administrators and health professionals, including licensed physicians and surgeons and nurses." Cal. Ed. Code, § 49423(a) and (b); Cal. Code Regs., tit. 5, 3051.12(b)(1)(B). A school district is required to maintain "specific standardized procedures" for each student with exceptional needs who receive SPHCS. Cal. Code. Regs. tit. 5, 3051.12(b)(3)(E).

21.    During the OAH Hearing, Grace Cheng, SFUSD nursing coordinator, testified that the District relies on the CSNO guidelines in determining appropriate treatment protocol and nursing care for H.D.'s tracheostomy and ventilator management. Ms. Cheng also testified that the District should not have provided Parents with a copy of the CSNO guidelines, stating that "this was a nursing document and not meant for families."

22.    The CSNO guidelines emphasize that skilled training is necessary for nurses managing tracheostomy and ventilator care, including tube replacements and suctioning. Furthermore, the CSNO guidelines indicate that only the following individuals may administer tracheostomy care to a student at school: a registered credentialed school nurse or school physician, a registered nurse, a licensed vocational nurse, or unlicensed individual under the direct or indirect supervision of a credentialed school nurse. Nurse Katy Ekegren, school site nurse at Sanchez Elementary, established via her testimony at the OAH Hearing that she is licensed as a registered nurse (R.N.). As Andrew Alderman and Phil Choi established during their testimony, neither were registered nurses at the time they provided 1:1 nurse support to H.D. Ms. Ekegren testified that she only spent part-time at Sanchez Elementary and had taken multiple extensive leaves of absence during the school years at issue in this matter. Ms. Ekegren's testimony revealed that an R.N. was often not present at Sanchez Elementary while

H.D. attended school. Therefore, Henry's assigned 1:1 nurses often lacked adequate supervision to provide tracheostomy care and management pursuant to his individualized healthcare plan (IHP) and in accordance with the CSNO guidelines.

23.     The CSNO guidelines also indicate mechanical ventilation may only be performed by a registered credentialed school nurse, a school physician, or a licensed registered nurse contracted by the school district. As established during her testimony, Dr. Gwynne Church, H.D.'s treating pulmonologist, stated "H.D. may require mechanical ventilation at school for multiple reasons, including loss of consciousness or elevated $CO_2$ levels." At the time of the hearing, H.D.'s assigned nurse was Phil Choi, LVN. Ms. Ekegren testified that she is not familiar with the CSNO guidelines and did not know why H.D. was assigned a licensed vocational nurse at the time of trial, contrary to the CSNO guidelines. Testimony established that Ms. Ekegren served as Sanchez Elementary School's school site nurse 2-3 days per week and took several extended leaves of absence from her position at Sanchez Elementary during each of the school years at issue in this matter. Testimony at hearing further established that Ms. Ekegren is not sufficiently familiar with H.D.'s IHP, medical equipment, and Emergency Care Plan to provide safe and effective nurse support to H.D or train others to safely and effectively implement H.D.'s IHP or Emergency Care Plan.

24.     As was established at the OAH Hearing, SFUSD provides direct and backup 1:1 nursing support to H.D. using a tiered model. There is a primary 1:1 nurse assigned to H.D. who provides direct nursing services for the entire school day. In the event the primary nurse is unavailable, the school site nurse or on-call nurse(s) serve as backup. If both the site nurse and on-call nurse(s) are unavailable, the District office nurse will provide Henry's 1:1 nursing services. In addition to appropriate training and experience, H.D.'s nurses require more than mere familiarity with H.D.'s IHP, specialized medical equipment, and Emergency Care Plan.

25.    At the OAH Hearing, Dr. Church testified that H.D.'s assigned 1:1 nurse should have experience treating live patients in tracheostomy and ventilator management, including experience changing a tracheostomy tube on a live patient. Dr. Church emphasized that mannequin training alone would be insufficient to ensure that H.D.'s assigned nurse is sufficiently competent to safely and effectively implement his IHP and Emergency Care Plan.

26.    Nurse Phil Choi, LVN, was H.D.'s assigned primary 1:1 nurse at the time of the OAH Hearing. Mr. Choi testified that he was a licensed vocational nurse at the time he provided 1:1 nurse support to H.D. While testifying at the OAH Hearing, Mr. Choi struggled significantly to maintain his composure and answer direct questions related to H.D.'s IHP and Emergency Care Plan. Mr. Choi presented himself as extremely anxious and timid during his testimony. He paused abnormally responding to basic questions and failed to recall several essential details relating to H.D.'s medical needs, such as recalling the specific scenarios in which H.D. would require ventilation intervention. At one point during his testimony, Mr. Choi appeared to panic, prompting one of numerous unplanned breaks during critical portions of his examination to afford him an opportunity to regain his composure. Also during Mr. Choi's testimony, ALJ Gilmartin called for a break and requested a sidebar with District's and Student's counsel, during which she stated "… the panicking, I also understand the panicking goes to the credibility of the witness, Mr. Goldsen, and it is being factored in, but I would also like to get through this witness, and the fact that the witness seems to be having a panic attack at every question seems to be concerning." Mr. Choi also testified that he had never replaced a tracheostomy tube on a live patient. Mr. Choi's presentation at the OAH Hearing raised serious doubts as to his ability to safely and effectively respond to medical emergencies involving H.D.

27.    Ms. Ekegren was the dedicated school site nurse at H.D.'s school during the school years in question, including during the OAH Hearing. Ms. Ekegren served as H.D.'s

backup nurse in the event H.D.'s primary nurse was unavailable. During her testimony, Ms. Ekegren demonstrated that she was unfamiliar with elements of the CSNO guidelines that SFUSD relied upon for H.D.'s tracheostomy and ventilator management protocol. Ms. Ekegren testified that H.D. had received ventilator intervention while at school from Andrew Alderman, licensed vocational nurse. Ms. Ekegren also testified that she could not recall the last time she replaced a tracheostomy tube on a live patient and that, prior to H.D., her most recent experience providing tracheostomy care to a live patient was several decades ago.

28.     Nurse Louanne Lee testified that she was the SFUSD central nurse coordinator during the time frame at issue in the OAH Hearing. Ms. Lee indicated via her testimony that she supported multiple schools within SFUSD from an office location separate from Sanchez Elementary School. Ms. Lee testified that she was one of the nurses responsible for training H.D.'s primary nurse(s), and that she served as a backup nurse for H.D. in the event his first and second tier nurses were unavailable. During her testimony, Ms. Lee was shown an image of several pieces of H.D.'s specialized medical equipment and was asked to identify them. Ms. Lee struggled to identify all of the equipment and stated: "The round dome, I can't remember what goes in – what that's used for." Toward the conclusion of Ms. Lee's testimony, ALJ Gilmartin questioned Ms. Lee's familiarity with Henry's medical equipment, directly asking Ms. Lee:

> "What I'm trying to understand is yesterday when you were shown that picture you demonstrated, you said the round dome, I can't remember what it's used for. So, you demonstrated a lack of familiarity with the equipment that this young man would need in the event he needed his trach changed. So, my question to you is what is the training and both counsel will have an opportunity to ask any follow-up questions to this question only, what is the plan that is in place if you are the person responsible for checking off the provider proficiency if you're unfamiliar with the equipment and the process yourself?"

Ms. Lee testified that she had never replaced a tracheostomy tube on a live patient, and that, prior to H.D., her most recent experience providing tracheostomy care to a live patient was several decades ago.

29.     SFUSD has failed to offer and provide H.D. with a qualified nurse who meets criteria recommended by his treating pediatric pulmonologist, Dr. Church. They have violated their own policy by offering and providing H.D. nurse support from providers who are not appropriately licensed to implement medical interventions required under H.D.'s IEP and IHP, all of which has resulted in H.D. assuming unnecessary risk of serious injury or death in order to attend school.

## FIRST CLAIM FOR RELIEF
**(APPEAL OF CERTAIN FINDINGS OF FACT AND CONCLUSIONS OF LAW SET FORTH IN THE OAH DECISION)**

30.     Plaintiff realleges and incorporates by reference as though fully set forth herein, paragraphs 1-30, inclusive, of this complaint.

31.     Plaintiff is a "party aggrieved" by the OAH Decision, as that term is used in 20 U.S.C. § 1415(i)(2)(A) and Cal. Educ. Code § 56505(k) in that the OAH Decision erred in holding in favor of the District with respect to issues 1A (District's failure to provide appropriate services and accommodations in the area of nurse support for the 2022 – 2023 school year), 2C (District's failure to provide appropriate services and accommodations in the area of nurse support for the 2023 – 2024 school year), and 3B (District's failure to provide appropriate services and accommodations in the area of nurse support for the 2024 – 2025 school year). For clarity, Plaintiff is not appealing the sections of OAH Decision issues 2C and 3B related to mental health.

32.     ALJ Gilmartin's decision was insufficiently thorough. She failed to consider the

interplay between the CSNO Guidelines and H.D.'s IEP in determining whether SFUSD provided appropriate nursing support to H.D. As established at the OAH Hearing, the CSNO Guidelines are clearly relied upon by SFUSD to establish "specific standardized procedures" as that term is used pursuant to Cal. Code Regs., tit. 5, 3051.12(b)(3)(E).

33.     ALJ Gilmartin also failed to incorporate an analysis of District's nurse witnesses' demeanor and their ability to safely and effectively implement H.D.'s IEP, IHP, and Emergency Care Plan. Analysis in this area was essential to determine whether H.D. was offered and provided "qualified" nurse support. ALJ Gilmartin openly expressed her reservations on the record concerning Louanne Lee, Katy Ekegren, and Phil Choi's competencies and knowledge, which is undeniably directly related to their ability to train others in the implementation of H.D.'s IHP and Emergency Care Plan and provide direct nurse support safely and effectively. Instead of rendering an opinion clearly within her authority, ALJ Gilmartin stated "This decision makes no finding on Choi's qualifications beyond being a licensed vocational nurse in the State of California." ALJ Gilmartin then stated, "Any determination about the competency of [Kathryn Ekegren and Louanne Lee's] care exceeds the scope of a special education hearing." (OAH Decision, p. 31.) Appropriate nursing care is a core component of H.D.'s IEP and is a "related service" as that term is defined in the IDEA. ALJ Gilmartin failed to render a decision related to the critical issue of nursing competency in determining whether SFUSD offered and provided appropriate nursing care to H.D. Appropriateness of nurse support cannot be decided without taking into consideration the competency and qualifications of the nurses actually supporting H.D. ALJ Gilmartin's decision as it relates to determining the appropriateness of H.D.'s nursing care during the relevant school years is inherently flawed and incomplete.

34.     Furthermore, ALJ Gilmartin erroneously expanded the scope of Dr. Church's testimony as it relates to her medical recommendation concerning minimum levels of nursing

experience, training, and competency by analyzing it through the lens of Cal. Code Regs. tit. 15, § 3999.147, a regulation that relates to the nursing competency program within the California Department of Corrections and Rehabilitation. ALJ Gilmartin misapplied the law and offered strained rationale that "Church's recommendation provided no possibility for training and competencies to be developed as the statute provides." (OAH Decision, p. 9.) This is inaccurate. Clearly, a nurse can possess the minimum levels of training and experience recommended by Dr. Church (e.g. experience providing tracheostomy and ventilator management services on a live patient), and receive on-going competency assessments throughout the hiring process, orientation, and training. Dr. Church is H.D.'s treating pulmonologist with specific knowledge of H.D.'s unique medical needs and her recommendation is individually targeted at ensuring H.D.'s necessary medical interventions can be safely and effectively administered at school so he can access the curriculum.

35.    Cal. Code Regs. tit. 15, § 3999.147 was ratified to address nursing competency checks within the adult California penal system and has no authority in the instant case. H.D. is not an adult. H.D. is not incarcerated. H.D. is a disabled minor receiving his elementary education at a public California school. H.D. is entitled to **_qualified_** nurse support that meets his individual needs via his IEP. H.D. requires trained, experienced, competent, and appropriate nursing care to maintain his safety so he can access the curriculum. Even if Cal. Code Regs. tit. 15, § 3999.147 applied, it does not dilute Dr. Church's testimony regarding minimum requirements for H.D.'s nursing care. By way of analogy, if the State Bar of California sets a minimum requirement that attorneys obtain a juris doctorate degree and pass the California bar exam prior to practicing law in California, that base qualification can be accompanied by requirements for ongoing competency assessments (e.g. by mandating continuing legal education requirements). Base qualifications and on-going competency protocols are not mutually exclusive.

36.     ALJ Gilmartin placed great weight on pediatrician Dr. Doshi's testimony because it happened to fit more neatly into an analysis of Cal. Code Regs. tit. 15, § 3999.147. (OAH Decision, p. 9-10.) Dr. Doshi is a consulting physician to SFUSD who has never treated H.D., has never reviewed H.D.'s educational records, does not possess medical specialization in pulmonology, and provides general medical recommendations to SFUSD. Again, ALJ Gilmartin applied a forced and unconvincing analysis to Dr. Doshi's recommendation regarding mannequin training and simulation as a way of enduring nursing competency for tracheostomy care and management (as opposed to prior direct experience on live patients). During her testimony, Dr. Doshi admitted that she never participated in or reviewed the curriculum of any of the nurse training courses referenced during her testimony. Yet, her testimony was afforded greater weight than H.D.'s treating pulmonologist, Dr. Church, who is a UCSF specialist in respiratory conditions with over 20 years of relevant experience.

37.     ALJ Gilmartin's conclusion that Dr. Doshi's testimony should be provided more weight lacks any element of common sense or credibility. Her rationale would lead one to believe that a recent graduate from flight school possessing no actual flying experience is more qualified to operate and perform an emergency landing for a fighter jet than an experienced fighter pilot with actual experience operating and performing emergency landings because a general flight instructor suggested that the recent graduate was available to receive competency checks during the hiring, orientation, and training process.

38.     As pled above, ALJ Gilmartin failed to properly consider the issues and remedies presented by J.B. and his Parents, including, *inter alia*, misstating and misanalysing the legal standards for SPHSs in an educational setting; giving unwarranted weight to testimony of Dr. Doshi; failing to adequately weigh the testimony of Dr. Church; erroneously relying upon a statute that is inapplicable in IDEA cases and which forms the basis of ALJ Gilmartin's decision; failing

to render an opinion as to the competency and credibility of Ms. Lee, Ms. Ekegren, and Mr. Choi; ignoring evidence related to SFUSD's CSNO guidelines in deciding whether SFUSD had offered and provided appropriate nurse support to H.D. Accordingly, the Decision is not supported by the preponderance of the evidence presented or by relevant legal authority.

39.     ALJ Gilmartin's findings, in part, were not consistent with a preponderance of the evidence as presented at the administrative hearing.

40.     Based on the allegations above, Plaintiffs request that this Court receive the records of the administrative proceedings below, hear additional evidence that Plaintiffs may submit, allow Plaintiffs to object to any evidence that Defendants may seek to add, and issue an order based upon the preponderance of the evidence in order to grant such relief as the Court deems appropriate.

### SECOND CLAIM FOR RELIEF

### (AGAINST SFUSD FOR RECOVERY OF REASONABLE ATTORNEYS' FEES UNDER 20 U.S.C. § 1415(i)(3)(B))

41.     Plaintiff realleges and incorporates by reference as though fully set forth herein, paragraphs 1-41, inclusive, of this complaint.

42.     As prevailing party in the proceeding before OAH, plaintiffs are entitled to reimbursement of reasonable attorneys' fees incurred during the course of those proceedings under 20 U.S.C. § 1415(i)(3)(B), as well as for attorneys' fees incurred in seeking those fees as part of this complaint.

### THIRD CLAIM FOR RELIEF

### (29 U.S.C. § 794 - VIOLATION OF SECTION 504 OF THE REHABILITATION ACT)

43.     Plaintiff realleges and incorporates by reference as though fully set forth herein, paragraphs 1-43, inclusive, of this complaint.

44.     Section 504 prohibits the denial to a person with a disability of participation in or the

benefits of a program or activity that receives Federal financial assistance. 29 U.S.C. § 794(a).

Section 504 applies to all school districts that receive federal assistance.

45.     Section 504 requires school districts to provide a free appropriate public education to students with disabilities "regardless of the nature or severity of the person's handicap." 34 C.F.R. §§ 104.33(a), 104.34(a).

46.     The requirements for providing an appropriate education under Section 504 state:

Appropriate education. . .is the provision of regular or special education and related aids and services that

(i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of non handicapped persons are met

and

(ii) are based upon adherence to procedures that satisfy the requirements of 34 C.F.R. §§ 104.34, 104.35 and 104.36. 34 C.F.R. § 104.33(b)(1).

47.     Section 504 regulations prohibit provision of "different or separate aid, benefits, or services to handicapped persons or to any class of handicapped persons unless such action is necessary to provide qualified handicapped persons with aid, benefits, or services that are as effective as those provided to others." 34 C.F.R. § 104.4(b)(1)(iv).

48.     Section 504 regulations further prohibit school districts from utilizing "criteria or methods of administration (i) that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap, (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program or activity with respect to handicapped persons, or (iii) that perpetuate the discrimination of another [Rehabilitation Act] recipient if both recipients are subject to common administrative control or are agencies of the same State." 34 C.F.R. § 104.4(b)(4).

49.     Additionally, Section 504 requires school districts to "establish and implement, with respect to actions regarding the identification, evaluation, or educational placement of persons who,

because of handicap, need, or are believed to need special instruction or related services, a system of procedural safeguards. Compliance with the procedural safeguards of [the IDEA] is one means of meeting this requirement." 34 C.F.R. § 104.36.

50.    Plaintiff is informed and believes, and on that basis alleges, that SFUSD was, at all relevant times, a recipient of federal funds, and that part of those funds were used in the operations, construction and/or maintenance of the specific public facilities and programs described herein and the activities that take place therein. SFUSD was obligated by law to provide H.D. with the same services and opportunities it provided to other students so that he could access an education.

51.    H.D.'s CCHS substantially limits his major life activity of breathing, thus he is a qualified individual with a disability as defined by 34 C.F.R. § 104.3(j). H.D. is trach dependent and requires qualified nurse support at school for the entirety of the school day in order to carry out routine care of H.D.'s airway, monitor his CO2 and oxygenation levels, and respond immediately and effectively in the event of an emergency. An emergency includes decannulation (i.e. dislodgement) of H.D.'s trach inserted into his artificial airway by way of a stoma in his throat. A failure to respond immediately and safely could result in serious injury or death. Due to the impact H.D.'s CCHS has on his autonomic nervous system's control over breathing, he requires mechanical ventilation while sleeping and unconsciousness. If he does not receive qualified nurse support in the event of an emergency, which includes being rendered unconscious, and mechanical ventilation within minutes, he could be seriously injured (e.g. permanent brain damage), or die.

52.    SFUSD has failed to offer and provide H.D. qualified nurse support so that he may safely access his education in a manner equal to his peers. H.D.'s safety is threatened every day he attends school without qualified nurse support.

53.    By failing to comply with the CSNO guidelines and take into consideration H.D.'s treating physicians recommendations when offering and providing nurse support to H.D., SFUSD

**H.D., a minor, by and through his Guardians Ad Litem v. San Francisco Unified School District**
**Complaint for Damages**

17

knew that it was substantially likely that H.D. would be harmed with respect to his federally protected right to a free appropriate public education, but failed to act on that likelihood, and thus SFUSD acted with deliberate indifference, thereby intentionally discriminating against H.D. in violation of Section 504.

54.    H.D. is entitled to equal opportunity to meaningfully access an education, an opportunity equally provided to students who do not have disabilities. For H.D. to meaningfully access an education, he requires qualified nurse support.

55.    SFUSD has inconsistently applied CSNO guidelines adopted as its own policy to H.D.'s nurse support in a manner that denies him meaningful access to his education.

56.    SFUSD violated Section 504 by failing to offer and provide qualified nurse support to H.D., thereby exposing him to unnecessary risk of serious injury or death, thus denying him meaningful access to education.

57.    As a result of the District's violation of Student's rights under Section 504, Student suffered injury including, but not limited to, educational injury, hedonic injury in that Student was deprived of the opportunity to engage in school activities and the opportunity to enjoy the society of other children of his age.

## FOURTH CLAIM FOR RELIEF

### (42 U.S.C. § 12132 - Violation of Title II of the Americans with Disabilities Act of 1990)

58.    Plaintiff realleges and incorporates by reference as though fully set forth herein, paragraphs 1-58, inclusive, of this complaint.

59.    Pursuant to 42 U.S.C. § 12132, Section 202 of Title II, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity. Title II of the ADA applies to all the activities of public entities, including school

districts that provide public education.

60.    The requirements regarding the provisions of a FAPE, specifically described in Section 504 regulations, are incorporated in the general non-discrimination provisions of the applicable ADA regulations. 28 C.F.R. § 35.103(a).

61.    Title II of the ADA regulations states:

A public agency providing any aid, benefit or service, may not directly or through contractual, licensing, or other arrangements, on the basis of disability

(i)  Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service;

(ii) Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

(iii) Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

(iv) Provide different or separate aids, benefits, or services to individuals with disabilities or to any class of individuals with disabilities than is provided to others unless such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others;

(v) Aid or perpetuate discrimination against a qualified individual with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's program;

(vii) Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service. C.F.R. § 35.130(b)(1).

62.    As with Section 504, the ADA regulations further prohibit school districts from "directly or through contractual or other arrangements, utilize criteria or methods of administration

(i) that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability;

(ii) that have the purpose or effect of defeating or substantially impairing

accomplishment of the objectives of the public entity's program with respect to individuals with disabilities; or

(iii) that perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State." 28 C.F.R. § 35.130(b)(3).

63.    H.D. was at all relevant times a qualified individual with a disability, as defined herein.

64.    At all relevant times, H.D. was entitled to the protections of the "Public Services" provision of Title II of the Americans with Disabilities Act of 1990 ("Title II"). Title II, Subpart A prohibits discrimination by any "public entity," including any state or local government, as defined by 42 U.S.C. § 12131, Section 201 of the ADA. SFUSD is a "public entity" and subject to Title II. At all times relevant to this complaint, SFUSD oversaw and provided education through programs and activities including providing specialized physical health care services to students with exceptional needs and other special education procedures. SFUSD was obligated by law to provide H.D. with the same educational opportunities that it provided to nonhandicapped students.

65.    Notwithstanding H.D.'s disability, H.D. believes and alleges that SFUSD subjected him to discrimination on the basis of his disability, including failing to offer and provide qualified nurse support to H.D. and exposing him to unnecessary risk of serious injury or death.

66.    Pursuant to 42 U.S.C. § 12133, H.D. is entitled to injunctive relief requiring SFUSD to offer and provide qualified nurse support to H.D., recovery of general and special damages to be proven at trial, and reasonable attorneys' fees and costs incurred in bringing this action.

67.    There was no federal or state guidance that prevented SFUSD from providing H.D. with related services he requires in order to access an education.

68.    As a result of the District's violation of Student's rights under the ADA, Student suffered injury including, but not limited to, educational injury, hedonic injury in that Student

was deprived of the opportunity to engage in school activities and the opportunity to enjoy the society of other children of his age.

### FIFTH CLAIM FOR RELIEF
**(Violation of Section 504 and the ADA)**

69.     Plaintiff realleges and incorporates by reference as though fully set forth herein, paragraphs 1-69, inclusive, of this complaint.

70.     ALJ Gilmartin concluded that H.D. was denied a FAPE as a result of SFUSD'S failure to provide CSNO guidelines for tracheostomy and ventilator management to his parents. "Providing these guidelines to [H.D.'s] parents was critical to their meaningful participation in [H.D.'s] IEP process as [H.D.] required suctioning throughout the day." (OAH Decision, p. 16-17.) The OAH Decision ordered that SFUSD must within 30 days of the OAH decision provide H.D.'s parents with copies of any guidelines relied upon by nursing staff to develop H.D.'s individual health plan.

71.     SFUSD failed to provide the guidelines relied upon by nursing staff to develop H.D.'s individual health plan within 30 days of the OAH Decision and has yet to provide such guidelines to H.D.'s parents as of the filing of this complaint. As a result, H.D. has only been able to attend public school by placing his health and safety at serious risk, unlike nonhandicapped persons who are able to attend public school without placing their health and safety at similar risk. SFUSD thus failed to provide H.D. with a free appropriate public education that was designed to meet his individual needs as adequately as the needs of nonhandicapped persons are met, in violation of Section 504, 34 C.F.R. § 104.4, and § 104.33(b)(1); and, the ADA.

72.     SFUSD's obligation to comply with a Hearing Officer's Decision is clear and unequivocal, and by failing to do so, SFUSD knew that it was substantially likely that H.D.'s parents' ability to meaningfully participate in the IEP process would continue to be denied and

H.D. would be unable to attend public school without placing his health and safety at serious risk. Nonetheless, SFUSD failed to act. Thus, SFUSD acted with deliberate indifference, thereby intentionally discriminating against H.D.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff requests judgment as follows:**

**On Plaintiff's First Claim for Relief:**

1. That the order of ALJ Gilmartin be reversed in Plaintiffs' favor in relation to issues 1A, 2C, and 3B.

2. Declare that Plaintiff is "prevailing party" as to issues 1A, 2C, and 3B as those issues relate to SFUSD's failure to provide H.D. qualified nursing care.

3. That the Court grant Plaintiffs' request for the opportunity to submit additional evidence permitted by the IDEA.

4. Order SFUSD to amend Plaintiff's IEP to include qualified nurse support consistent with Dr. Church's recommendation.

5. Order SFUSD to provide qualified nurse oversight/supervision services to monitor and ensure safe and effective treatment.

6. Award compensatory education to Plaintiff under the IDEA according to proof.

**On Plaintiff's Second Claim for Relief:**

7. Award reimbursement of reasonable attorneys' fees and costs incurred by Parents in connection with the proceedings before the OAH pursuant to 20 U.S.C. § 1415(i)(3)(B).

**On Plaintiff's Third, Fourth, and Fifth Claims for Relief:**

8. Order SFUSD to amend Plaintiff's IEP to include qualified nurse support consistent with Dr. Church's recommendation.

9. Order SFUSD to provide qualified nurse oversight/supervision services to monitor and ensure safe and effective treatment.

10. Order SFUSD to provide H.D.'s parents copies of any guidelines relied upon by nursing staff to develop H.D.'s IHP.

11. General damages as relevant according to proof.

12. Special damages as relevant according to proof.

13. Equitable damages as relevant according to proof.

**On All Claims for Relief:**

14. Award reasonable attorneys' fees and costs incurred by Parents in connection with the current proceeding.

15. Prejudgment interest as relevant according to proof.

16. For such additional relief as the court determines as appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all his legal claims except IDEA claims pursuant to Federal Rules of Civil Procedure 38(b).

DATED: April 16, 2025                     **Special Education Collaboration Project**


_____
                              */s/ Evan Goldsen*
                                    Evan Goldsen
                                    Carly Christopher
                                    Attorneys for Plaintiffs